IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


REBEL DEBUTANTE LLC, a North*
Carolina limited liability  *
company, and ANNA           *
STUBBLEFIELD, a/k/a Anna     *
Fields,                     *
                            *  Case No. 1:11CV113
                Plaintiffs,  *
                            *
vs.                         *
                            *  Greensboro, North Carolina
FORSYTHE COSMETIC GROUP,    *  March 15, 2011
LTD, a New York Corporation,*  9:30 a.m.
                            *
                Defendant.   *
******************************

                TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE THOMAS D. SCHROEDER,
                UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Plaintiffs:        ANDREW L. FITZGERALD, ESQUIRE
                           BRENDAN G. STUHAN, ESQUIRE
                           Strauch Fitzgerald & Green, PC
                           118 South Cherry Street
                           Winston-Salem, North Carolina 27101


For the Defendant:         CLINTON S. MORSE, ESQUIRE
                           Brooks Pierce McLendon Humphrey
                             & Leonard, LLP
                           Post Office Box 26000
                           Greensboro, North Carolina 27420


Court Reporter:            Lori Russell, RMR, CRR
                           P.O. Box 20593
                           Winston-Salem, North Carolina 27120


            Proceedings recorded by stenotype reporter.
        Transcript produced by Computer-Aided Transcription.

1                    P R O C E E D I N G S

2              THE COURT:  All right.  Good morning, everyone.

3    We're here for Rebel Debutante LLC, et al. versus Forsythe

4    Cosmetic Group.  Let me ask the parties to go ahead and

5    state their appearances for the record, if you would.

6              MR. FITZGERALD:  Thank you, Your Honor.  Andrew

7    Fitzgerald for Plaintiffs; and before Mr. Stuhan stands up,

8    I want to -- who is with me, just so you know, he is

9    admitted -- passed the North Carolina State Bar, admitted to

10   the state courts, admitted in the Western District,

11   application pending to the Middle District.  I just want to

12   make sure that's noted.

13             THE COURT:  That's fine.  All right.  Thank you.

14             MR. MORSE:  Clint Morse for Forsythe Cosmetic

15   Group.

16             THE COURT:  All right.  I've got several things

17   that I've received.  I've got a motion for preliminary

18   injunction.  I have a request for expedited discovery and I

19   have a request to extend the time to respond for the motion

20   for preliminary injunction and now I have a motion to

21   transfer the matter under 1404(a) to New York.  So I need to

22   address all of those today.

23        Let me start with, I guess, the Defendant's request for

24   more time to respond to the preliminary injunction.  How

25   much time do you think you need?

1          MR. MORSE:  Your Honor, I -- it depends on how the
2    motion to expedite proceedings go.  If we win on the motion
3    to expedite proceedings and it's denied, then I think that
4    we can have a response in within four days max; and if we
5    lose -- if we lose on that motion and expedited discovery is
6    granted, then there's probably going to be a rebriefing
7    period at the end.  So we would prefer to not have
8    rebriefing and just brief it once at the end of expedited
9    discovery.
10         THE COURT:  All right.  The matter seems to be a
11   little bit complicated by the request to transfer this to
12   New York.  I know you haven't had an opportunity to respond
13   to that because I think that may have been filed either on
14   Sunday or yesterday; but I'm interested to know whether,
15   from the Plaintiffs' point of view, you feel like this --
16   first of all, have you discussed whether or not this ought
17   to be in New York and discussed whether that might actually
18   save everybody a bunch of money in terms of dealing with the
19   case or not?
20         MR. FITZGERALD:  Absolutely, Your Honor.  And this
21   is what's kind of strange about the motion.  If you read it,
22   you see it's predicated on the assumption that
23   Ms. Stubblefield, who is here today, is -- lives in New
24   York.  I guess they got on Google and saw something related
25   to her in New York.  As you may have noticed in the

1    complaint, I signed pursuant to Rule 11 that she lives here
2    and she does.  She's a Wake Forest student, full class load,
3    no address in New York whatsoever.  Her apartment is here.
4    I brought her student ID.  I brought her driver's license.
5    I brought a utility bill.  Additionally, her company is
6    here.  Her operations are here.
7         So the whole predicate of the motion that everything --
8    everybody is in New York anyways is just not accurate and I
9    could have resolved that with a phone call.  I mean, so
10   therefore, we very strongly oppose the motion because she's
11   here.
12             THE COURT:  Okay.  Yes.
13             MR. MORSE:  Your Honor, may I respond shortly?
14   That may be the case and we haven't had any facts to show
15   otherwise.  When we did this Internet search, everything
16   that came up was her -- Ms. Stubblefield representing to the
17   world that she lives in New York.  Thus, if she's at least
18   representing to the world that -- even if she does live
19   here, if her representation to the world is that she lives
20   in New York, it shouldn't be that difficult to try this case
21   in New York.
22             THE COURT:  Okay.  Well, what I'm going to do is
23   at least give the Plaintiffs an opportunity to respond to
24   the motion to transfer.
25        I understand that there's an interest in having this

1    resolved quickly, as there is with most preliminary

2    injunction matters, but there does seem to be a little bit

3    of history in this case.  It looks like the demands to

4    cease and desist started in September of 2010; and I

5    understand the back and forth, at least as it's explained in

6    the briefs -- and I've read all the briefs -- that there was

7    some delay getting response.

8        I don't want to get into all that now other than to the

9    question of timing; and that is, it strikes me that the

10   urgency to resolve the matter is -- is largely just based on

11   the fact that the Defendant is continuing to sell a product

12   that the Plaintiff says infringes on the mark; and if that's

13   the case, my impression is that there's nothing that's

14   causing such urgency that we have to resolve this within the

15   coming days as opposed to, perhaps, within, you know, a few

16   weeks.

17       Are you -- do you want to take issue with that or is

18   that a fair characterization?

19           MR. FITZGERALD:  I won't take issue with that at

20   all.

21           THE COURT:  All right.

22           MR. FITZGERALD:  It's not like we have a historic

23   building with a bulldozer out front, is kind of the image

24   I'm looking at; but it is -- you know, it is an

25   infringement.  It is very serious and irreparable, but I

1    don't take issue with the way you characterized that

2    whatsoever.

3          THE COURT:  Okay.  All right.  Well, normally I

4    would have asked the magistrate judge to come up -- to work

5    with you-all and come up with some scheduling; but since

6    this all relates to a preliminary injunction issue, that's

7    why I asked you-all to come in here today.

8        The other issue then I'll need to address before I now

9    make some decisions is the request for expedited discovery.

10   I did review the discovery requests.  Many of them do seem

11   to go to the merits of the case; and while that's certainly

12   relevant to the preliminary injunction, they do seem to be

13   more information than one would need to prove a case or

14   attempt to prove up a case for a preliminary injunction at

15   this stage.

16       Have you-all sat down to try to talk to each other

17   about whether you can come to any common agreement as to

18   what kind of expedited discovery you would be willing to

19   agree to, keeping in mind that the Defendant, of course, has

20   asked for reciprocal discovery?  So what's good for the

21   goose may be good for the gander.

22         MR. FITZGERALD:  Absolutely.  We have not.  We

23   offered to.  It was -- that offer was rejected, and I will

24   here in open court make the offer to take Mr. Morse to lunch

25   today and do it today.

1       And I do understand what you're saying.  I do realize

2    some of the discovery -- there's -- that line between PI and

3    merits is a -- it can get hazy.  I respect that.  I'm

4    perfectly willing to talk and to narrow things, absolutely.

5       THE COURT:  What is it that you think you need at

6    this point for -- for a preliminary injunction hearing, not

7    for the merits of the case in terms of proving up your

8    ultimate damage claim, but in order to prove the elements

9    for a preliminary injunction, keeping in mind now that the

10   standard in the Fourth Circuit is a little bit different

11   than what it was two or three years ago.  *Blackwelder* is no

12   longer applicable.

13      MR. FITZGERALD:  Mr. Stuhan will respond to that.

14      THE COURT:  All right.

15      MR. STUHAN:  Your Honor, I mean, honestly, I

16   believe that the motion and just what's in there is probably

17   sufficient here.  We have a defendant who has adopted

18   exactly the same trademark as our clients' trademark and has

19   used it on very similar goods, woman's fashion accessories,

20   addressed to the same customers and sold right next to

21   Plaintiffs' at least online here.  And I think that part is

22   clear, but it certainly -- I think one of the big issues is

23   the intent of the Defendant here.

24      This is a defendant who is not unfamiliar with the

25   trademark process.  They've been enjoined twice previously,

1  which would suggest to me that they know what -- have some

2  basic understanding of the laws of trademark infringement;

3  and they began putting this product into -- into consumption

4  just a few months after the registration was granted; and

5  they didn't even do a search on the -- on the trademark is

6  what they referred in their affidavit.  So to me, it's

7  interesting at least and it suggests that there's some

8  indication that they intentionally or just reckless did it.

9  That is a -- that's one of the factors that the Court must

10  consider.

11        THE COURT:  In light of what they've now filed --

12  and it occurred to me that there were some things Plaintiff

13  said they didn't know as they filed the case.  The Defendant

14  has filed at least one affidavit that I read and some of the

15  facts now that appeared not to have been known by the

16  Plaintiff are now known in the case.

17      Is there anything in addition to that that you believe

18  you need?  What I'm trying to determine is whether you need

19  expedited discovery at this point before a preliminary

20  injunction hearing or whether you now believe you have

21  sufficient information to go forward.  If you think you need

22  more information or are entitled to it, that's what I want

23  to know, what areas do you think you need.

24        MR. STUHAN:  Well, I do want to get information

25  relating to -- to their intent.  So that would be their own

1     communications and discussions about how they went about

2     adopting this mark, also information about their advertising

3     and marketing.  Both their plans and how it was done is

4     highly relevant here.  Certainly the information about

5     whether they searched for the trademark.  There is --

6     certainly there's an affidavit, but that's not conclusive on

7     the issue.  Any documents they had, any discussions they had

8     about whether they did the trademark search.  Certainly the

9     advertising, the marketing is, I believe, critical here,

10    especially because it is an element in the

11    likelihood-of-confusion analysis.

12         THE COURT:  What kinds of advertising?  You mean

13    you want to know what ads they're running?

14         MR. STUHAN:  Yes.  That's right.  What type of ads

15    and where they've run it, are they running it in magazines

16    or other print advertisements.  I understand that they are

17    not a retailer.  They probably don't do radio advertisements

18    and TV, but certainly their advertising and marketing

19    generally.

20         THE COURT:  All right.  Anything else or is

21    that -- I want to make sure I understand what's on your

22    list.

23         MR. STUHAN:  Right.  Let me turn to the motion

24    here.

25         (Pause in the proceedings.)

1          THE COURT:  My reading of your discovery request

2     seemed to suggest that many of them went to the merits of

3     the case and what I'm trying to -- to determine now is

4     simply what might be needed, from your point of view, for a

5     preliminary injunction hearing and limit it to that.

6          MR. STUHAN:  Of course, likelihood of success on

7     the merits is part of the preliminary injunction.  That's

8     why many of them are indeed directed to that.  I mean, I

9     don't think we necessarily have to have depositions in

10     advance here, but I would like to know who their individuals

11     are.  If we need to take a deposition, I could do a 30(b)(6)

12     limited to the preliminary injunction issues.

13          We would like to get information about their Internet

14     service provider because I think it would be highly relevant

15     to the issue of confusion if people are doing searches for,

16     for instance, *Confessions of a Rebel Debutante*, the title of

17     Plaintiff's book, and went from there to Forsythe's site.

18     That would, I believe, show direct evidence of the

19     confusion.  And we would like other -- other evidence of

20     confusion, such as any communications that they've received

21     asking about *Confessions of a Rebel Debutante* or referencing

22     Anna Fields.  I think that -- that particular request No. 14

23     is highly, highly narrow for exactly that purpose, not at

24     all a fishing expedition.

25          Also, if they made any efforts to register their mark.

1    That goes to the trademark searching process.  But certainly
2    if they attempted to register the mark REBEL DEBUTANTE and
3    then the -- it goes back and the trademark office said, "No,
4    we're not going to let you do that.  There's already one on
5    file."  That would also go to the evidence of their intent.
6         We have some general requests about the products and
7    how they're distributed and who generally their distributors
8    are.  I'm guessing that's the primary area they're objecting
9    to on the overbroadness and that's one area we're very
10   willing to talk.  I don't know what's going to show us, give
11   us a general idea of what you're doing with your products,
12   how your business operates, but that sort of information
13   would be relevant.  We're very willing to --
14        THE COURT:  What is the principal issue right now
15   that you are concerned with?  Isn't it the question of
16   whether there's likelihood of confusion?  Isn't that what
17   this case is all going to be about at the end of the day?
18        MR. STUHAN:  It is, yes.  So I'd say that
19   information we can deal with in a much more limited basis at
20   this time is how generally you're doing, but the way in
21   which they distribute their products is also relevant in
22   that analysis, and that's where that would come in.
23        THE COURT:  All right.  Thank you.
24        All right.  Mr. Morse.
25        MR. MORSE:  Yes.

1          THE COURT:  From your point of view, if I order

2     some expedited discovery -- and I tend to agree with you, a

3     lot of the requests were overbroad; but in the event I

4     decide to keep the case here, which I haven't decided yet,

5     if I were to allow some expedited discovery -- and I've done

6     that before in matters like this -- it would strike me that

7     some discovery going to the issue of likelihood of confusion

8     would be appropriate at this point in time.

9          MR. MORSE:  Yes, Your Honor.  We agree that some

10    discovery going specifically to likelihood of confusion --

11    you know, there are four elements they need to prove.  They

12    need to prove success on the merits, which is essentially

13    going to be a likelihood-of-confusion analysis.  They need

14    to prove irreparable harm, which is going to be difficult on

15    a preliminary injunction stage for them, we contend.  Then

16    they're going to need to --

17         THE COURT:  Is there not irreparable harm if they

18    have a registered mark and your client is using the mark?

19    Is that not irreparable?  Aren't they losing the value of

20    their mark if your client uses it without approval?

21         MR. MORSE:  Well, Your Honor, the way we look at

22    it and the way we look at it after *eBay* is that you need to

23    show something that some sort of clash of goodwill between

24    the businesses.  The affidavit evidence before the Court

25    right now is they're continuing to grow their business.

1    We're continuing to operate our business entirely

2    independently of each other.  There's no actual confusion in

3    the case and there's no evidence of willful infringement in

4    the case.

5        We do recognize the Fourth Circuit case, the -- I'm

6    sorry.  Let me pull it up real quick.  The copyright case

7    from the Fourth Circuit applying *eBay* in the copyright

8    context was a willful infringement case; and indeed there

9    probably is some sort of irreparable damage separate and

10   apart from actual confusion and goodwill, reputational-type

11   damage in that type of a case; but the evidence before the

12   Court is that neither one of those situations apply.

13   Furthermore, the delay was pretty substantial in this case.

14   So we think they're going to have a hard time on that.  And

15   then there's going to be a balancing of the equities and a

16   public interest inquiry as well.

17       So if you look at all that -- and, as Your Honor

18   pointed out, likelihood of confusion is going to be the area

19   where they may need -- may be entitled to some expedited

20   discovery, but then the question is what is it.  It's their

21   burden to show likelihood of confusion.  Certainly prior

22   advertisements aren't going to be relevant into that

23   inquiry.  That might be relevant to their damages inquiry,

24   but it's not going to be relevant to the question of is

25   there going to be an injury pendente lite in this case, and

1   that's what they need to -- that's what those discovery

2   requests need to be seeking.  And the way we look at it --

3          THE COURT:  Why wouldn't the prior ads be

4   relevant?

5          MR. MORSE:  Prior ads -- prior ads certainly can't

6   create a current irreparable harm pendente lite in this

7   litigation.  Certainly a prior ad might be -- if it was

8   horribly infringing, create some damages argument down the

9   road; but that's not an irreparable harm that's going to

10  occur pendente lite or a likelihood of confusion that's

11  going to occur pendente lite.  So prior ads don't seem to me

12  to be very -- we respectfully suggest that prior ads should

13  not be part of the expedited discovery in this case.

14      And the more we looked at it the more we thought it's

15  their burden to show likelihood of confusion and they

16  have -- you know, they have our website.  They have our

17  displays.  They can see that every use of our mark shows

18  that it's Rebel Debutante collection under the COLOR CLUB

19  mark.

20      So they're going to need to be able to prove that their

21  use and our use with the COLOR CLUB mark attached shows some

22  likelihood of confusion.  It's their burden.  They haven't

23  done it yet and we respectfully suggest that they can't do

24  it without an expert and we don't see how too much

25  information that we would have would help them overcome that

 1    burden.

 2              THE COURT:  You mean can't prove at least at trial

 3    without an expert.

 4              MR. MORSE:  I don't think that they're going to be

 5    able to get past the preliminary injunction stage without an

 6    expert, Your Honor.  They have to show a likelihood of

 7    success on the merits and show a clear showing of likelihood

 8    of success on the merits -- sorry -- clearly show likelihood

 9    of success on the merits.

10         The two marks are dissimilar.  You've got one that says

11    "COLOR CLUB Rebel Debutante" and it's used on different

12    products.  The other mark says "REBEL DEBUTANTE," which is

13    used in a wide variety of uses, but certainly doesn't have

14    that COLOR CLUB attachment to it.  They're going to need to

15    be able to show that having that COLOR CLUB attachment to it

16    that they're still able to show a likelihood of --

17    likelihood of confusion and that's why we're getting --

18    that's why we look at this and go, What is that we would

19    have that would help them overcome that obstacle?  And we

20    don't think we have much that would help them overcome that.

21              THE COURT:  Okay.  All right.  Well, that would be

22    up to them to, I guess, discover, ultimately to see whether

23    they have anything.

24         So the questions then appear to be related to areas of,

25    one, likelihood of confusion; and that to me would include

1    all the advertising, particularly if there's print ads
2    because print ads tend to stay in the public domain even
3    after they are issued and for that reason have the
4    possibility of creating a continuing message to the public,
5    even though they were issued perhaps a year ago.  So one
6    area then is all ads and marketing that have been issued for
7    the -- this is a nail polish?  Is that what we're talking
8    about?
9              MR. MORSE:  Yes, Your Honor.
10             THE COURT:  Okay.  All right.  For your client's
11   nail polish.
12         Another area would be all communications to and from
13   your client regarding the Rebel Debutante nail polish sold
14   under your COLOR CLUB label.  I'll let you come back to that
15   one in a minute, so put a star by that one.
16         Another area is going to be all documents related to
17   whether the Defendant searched for the Plaintiffs'
18   trademark.  By that I mean whether a search was conducted
19   for the REBEL DEBUTANTE name.
20         Related to that would be all documents related to
21   Defendant's attempt, if any, to register Rebel Debutante in
22   any form, whether that's individually as Rebel Debutante or
23   Rebel Debutante as part of a larger name.
24         Okay.  Now, I'm not sure I understand why the Internet
25   service provider name is important in this case.  You have

```
 1    all the information that's on the Internet.  What benefit at
 2    this point in time is that, if any?
 3            MR. STUHAN:  Well, Your Honor, it would be that
 4    often the Internet service provider has data and statistics
 5    about websites and the usage of them, and how -- how people
 6    are searching for the site and getting to the site, what
 7    search terms they're putting in, what sites they came from
 8    before they got there.
 9            THE COURT:  All right.
10            MR. STUHAN:  So it would be relevant, for
11    instance, if somebody put in *Confessions of a Rebel*
12    *Debutante*, which would be a reference to our client's book,
13    and then from there the Forsythe nail polish collection came
14    up and they clicked on the link to get there.  I would say
15    that's evidence of either a consumer who was actually
16    confused or likely to be confused or the Defendant
17    capitalizing on the goodwill of the REBEL DEBUTANTE mark and
18    reputation of it to get to their site.
19            THE COURT:  I'll hear from you in just a moment.
20    As a practical matter, how would you get that information
21    prior to a preliminary injunction hearing?
22            MR. STUHAN:  I would say likely by subpoena to the
23    ISP.
24            MR. FITZGERALD:  Your Honor, if I could interject.
25    I will tell you that I'm our -- the ISPs at our law firm,
```

1    the contact.  I get an e-mail once a month that says this is

2    how people got to your website via a search term, this is

3    how long they stayed, this is where they came from.  They

4    may have internal documents.  Therefore, I get an e-mail on

5    the second day of every month that gives me those

6    statistics, including what country people come from.  It's

7    just a long list of kind of -- it's not that important to

8    us.  But the company is marketing online, obviously, so they

9    may have internal statistics and documentation showing how

10   people got to their website because I know I do.

11             THE COURT:  "They" meaning the Defendant?

12             MR. FITZGERALD:  Yes, sir.  I apologize.  The

13   Defendant, yes, sir.

14             THE COURT:  All right.  I'm going to give you a

15   chance to speak to all these in just a moment.

16        (Pause in the proceedings.)

17             THE COURT:  Okay.  Mr. Morse, let me speak with

18   you just a moment then.  Do you want to be heard on any of

19   these?  I've just made a list, if you've been following

20   along, of areas that I'm considering granting some discovery

21   on.

22             MR. MORSE:  The -- certainly all communications to

23   and from regarding Rebel Debutante nail polish seems to me

24   to be somewhat overbroad in that the issue that they need to

25   show is did we have some knowledge of their mark; and so I

1    think that communications regarding their mark would be
2    relevant but not necessarily all communications regarding
3    our mark and our design of our mark, which occurred at
4    total -- which could have occurred totally independent of
5    and for other business reasons other than their mark.
6              THE COURT:  Your mark being what?
7              MR. MORSE:  Being the Rebel Debutante collection
8    under the COLOR CLUB brand.  So I think that issue is
9    probably a little bit overbroad and could be narrowed
10   somewhat to say the communications involving -- any
11   communications involving their mark.  But the other ones I
12   believe that the Court is very reasonable on.
13             THE COURT:  Okay.  All right.  I'm going to order
14   discovery then on -- expedited discovery be permitted on
15   those grounds then.
16        So number one is all advertising and marketing issued
17   for the Defendant's product bearing the name Rebel Debutante
18   in any fashion.
19        Number two is all communications to and from the
20   Defendant regarding the phrase, quote, Rebel Debutante,
21   closed quote, irrespective of the context.
22        Three is all documents related to whether Defendant
23   searched for the Plaintiffs' trademark for REBEL DEBUTANTE.
24        Four is all documents related to the Defendant's
25   attempt, if any, to register the mark, quote, Rebel

1    Debutante, closed quote, in any form.

2        Five is the Internet service provider name for the

3    Defendant's website and any documents that -- I'll make six,

4    rather, any documents that relate to any information that

5    the Defendant may have received from the Internet service

6    provider or anybody on its behalf related to searches that

7    contain the phrase "Rebel Debutante" in any form.

8        Now, if you get this information, are you contending

9    that you need any depositions at this point or are you going

10   to be prepared to go forward on the record with what you

11   have?

12           MR. STUHAN:  I suspect that we're going to be

13   prepared to go forward on the record.  Part of it will

14   depend on what is produced and whose names show up on the

15   documents, but I'm guessing that that will probably be

16   sufficient.

17           THE COURT:  Okay.  Do you want to be heard any

18   further, Mr. Morse?

19           MR. MORSE:  Not on this issue, but we would like

20   some reciprocal discovery.

21           THE COURT:  All right.  What is it that you

22   contend you would be entitled to, keeping in mind the rule

23   of relativity here on limited discovery.

24           MR. MORSE:  Yes, Your Honor.  We would like to

25   have limited discovery into any experts they are planning to

1    put forth for the reasons that I previously stated; that we

2    believe they probably need an expert to get over the

3    likelihood-of-success-on-the-merits provision.

4              THE COURT:  All right.  How about if I do this.

5    If the Plaintiffs intend to call an expert for purposes of

6    the preliminary injunction hearing, that they disclose the

7    expert pursuant to federal rules.  I'm going to say 10 days

8    before the hearing and that's 10 calendar days before the

9    hearing, if and when the hearing date is set.  And then the

10   Defendant will be entitled to conduct a deposition of the

11   expert and that will be limited to the issues that the

12   expert is going to be testifying about at the preliminary

13   injunction hearing.  All right.  In other words, I don't

14   want full-blown discovery during the deposition, only

15   whatever it is he or she is intending to cover.  That way if

16   no expert is called then that issue becomes moot.  All

17   right.

18             MR. MORSE:  Thank you, Your Honor.

19             MR. FITZGERALD:  We just ask that that be

20   reciprocal as well in case they call an expert at the PI

21   hearing.  And maybe even -- since we have the burden of

22   proof, I wouldn't object to them being five calendar days

23   before or something like that, if that's okay.

24             MR. MORSE:  That's fine.

25             THE COURT:  All right.  Then I'll order the same

1    rules apply, five calendar days before any hearing that the

2    Defendant then has to designate an expert, and both parties

3    are to make their experts reasonably available for

4    deposition.

5        All right.  You-all are experienced lawyers, so I know

6    I won't need to get involved in any disputes about what's

7    reasonable and what's not reasonable in terms of timing.

8            MR. MORSE:  Your Honor, just to clarify one issue

9    real quick.  You said they would designate pursuant to the

10   federal rules.  I just wanted to clarify that you mean with

11   full 26(a) disclosure.

12           THE COURT:  That was my intent, yes.

13           MR. MORSE:  Thank you, Your Honor.

14           THE COURT:  All right.  Okay.  We'll talk about

15   timing of that discovery next then.  Let me ask you first,

16   Mr. Morse, how long do you think it would take you to pull

17   together this information on behalf of your client?

18           MR. MORSE:  Your Honor, I don't know if I'm

19   totally prepared to make that representation to the Court

20   right now, but the one big point on here that's going to

21   take, you know, some significant document review is the

22   communications issue and so -- because that's going to

23   include e-mails, electronic discovery and all things like

24   that which -- we're a big company.  There going to be a

25   bunch of e-mails that are going to be involved on that.  I

1    would think that's going to take 30 days to get that

2    accomplished and that's total -- I do not know the scope of

3    the e-mails involved, but I think that at a minimum it's

4    going to take 30 days.

5           THE COURT:  Okay.  Well, here's what I'm going to

6    do.  I'm going to order that the materials be -- that I've

7    indicated be produced be produced within 21 calendar days.

8    If for some reason there's a glitch, I encourage you-all to

9    communicate with each other; and if you then agree to some

10   other extension, that's acceptable; but if you can't agree

11   to it, then it's 21 days.  Otherwise, you'll need to come

12   back here and make an application for more time and indicate

13   why.  All right.

14          MR. MORSE:  Thank you, Your Honor.

15          THE COURT:  All right.  Now, I think that takes

16   care of the discovery issues, unless there's anything else

17   anybody wants to address.

18      Now, I -- what I need then is a response to the motion

19   to transfer.  You're entitled to file a response.  I don't

20   know if you're going to want to reply to the response,

21   Mr. Morse, or not.

22          MR. MORSE:  We'll wait and see what's said in the

23   response.

24          THE COURT:  I suspected that would be the

25   response.

1    Okay.  You -- the Plaintiffs are the ones who are
2    requesting an expedited schedule for all of this.  Keeping
3    in mind your interests and also the discovery schedule,
4    you're entitled to take your full time to respond to the
5    motion to transfer or we can expedite that.  I don't know
6    how you wish to proceed at this point.
7              MR. FITZGERALD:  My brief is going to be she lives
8    here, so I can get it tomorrow to the Court.  It's not a
9    hard brief to write.
10             THE COURT:  All right.  Okay.  Well, I'm going to
11   then just order that be filed this week, so by the end of
12   the week.
13        And then, Mr. Morse, if you can file a response within
14   five days of that.  Will that be sufficient time or do you
15   want more time?
16             MR. MORSE:  Five days will be fine, Your Honor.
17             THE COURT:  All right.  File a response within
18   five days of whenever it is that the Plaintiffs file their
19   response.
20        Okay.  I think what I'm going to do then is at least
21   tentatively set a -- a date to hear the preliminary
22   injunction matter now.  Are you anticipating calling any
23   live witnesses for this or do you think it's all going to be
24   on the record?
25             MR. STUHAN:  I suspect it will be primarily the

1    Plaintiff, Ms. Fields, and maybe one or two other witnesses

2    at most, but she will be the primary witness.

3            THE COURT:  All right.  But do you expect to have

4    live testimony or do you not -- can you say yet?

5            MR. STUHAN:  We do expect to have live testimony.

6            THE COURT:  Okay.  All right.  Let me talk to

7    Ms. Solomon for a minute to see what my schedule is.  I have

8    a criminal term next month, so we will have to see where we

9    can fit this matter in.

10           (Discussion between the Court and Ms. Solomon.)

11           THE COURT:  Okay.  All right.  As I've said, I

12   have the criminal trial caseload for the coming month.  I

13   could set this for April the 29th at two o'clock in the

14   afternoon.  If I do some of the math, giving the Defendant

15   21 days to respond to some of the discovery, that takes us

16   out into April anyway, to the first full week of April.

17   There's some chance that date might be moved, but I don't

18   know yet.  I'll just have to see.  But right now we'll set

19   it for two o'clock on April the 29th.

20       That leaves open then the question of the Defendant's

21   response to the motion for preliminary injunction.  How much

22   time do you want to respond to that given that setting?

23           MR. MORSE:  Yes, Your Honor.  I think it still

24   boils back down to the idea that I -- is there going to be a

25   rebriefing after they get the 21 days document request.  If

1    there is, then we can wait until the end -- wait until the

2    end of the expedited discovery to do it.  Otherwise, if

3    there's not going to be a rebriefing, then we can do it this

4    week.

5            THE COURT:  Okay.  Well, here's what I'll do then.

6    I'm anticipating that you may file some further materials

7    depending on what information you get from discovery.  So --

8    and I think you already know what the key issues are in the

9    case.  It doesn't seem to be much surprise.  So if the

10   Plaintiff intends to supplement her materials, then let's do

11   that -- this is on the motion for preliminary injunction.

12   Let's do that by Monday, April the 18th.  That will allow

13   you to get your taxes done on the 15th and then you can file

14   your brief on the 18th.

15       And then the Defendant can have until -- well, let me

16   ask.  How many days do you want to respond after that?  You

17   pretty much have an idea of what they're doing, so I'm not

18   inclined to give a long time after that because I'm

19   intending them simply to supplement what they have.

20           MR. MORSE:  Is four days all right with you-all?

21           MR. FITZGERALD:  Absolutely.

22           MR. STUHAN:  Fine.

23           THE COURT:  Can you file it by the 22nd, the

24   Friday?  Is that okay?

25           MR. MORSE:  That's fine.

1          THE COURT:  That will give me a few more days to

2     have it to read, particularly since I may be in a trial that

3     week.  It would be helpful to have it in advance.  So by the

4     close of business on the 22nd of April, the Defendant can

5     then file its brief and then -- I don't know that there's

6     going to be any need for a reply brief.  You'll be at the

7     hearing, so you can argue whatever you want at the hearing

8     at that point.  I think the issues will be pretty

9     straightforward at that point, at least hopefully.

10         Okay.  Now, having resolved all of those issues, there

11    remains the question of whether the case stays here or goes

12    to New York; and when I get the briefing on the motion to

13    transfer, if for any reason I think the case ought to be

14    transferred, then, obviously, that will affect some of this,

15    except that the discovery dates will continue to hold

16    pending some change of those by the transferee court if the

17    case is transferred.

18         All right.  Is that -- is that clear to everybody?

19              MR. MORSE:  That's clear.

20              MR. FITZGERALD:  Thank you.

21              THE COURT:  All right.  Now anything further I

22    need to address?

23              MR. FITZGERALD:  No, Your Honor.

24              MR. MORSE:  No, Your Honor.

25              THE COURT:  Okay.  I hesitate to make a comment

1    because I don't intend to speak to the merits of the matter,

2    but I don't know the extent that this product name --

3    subproduct name, if you want to call it that, among the

4    COLOR CLUB nail polish of the Defendant, I don't know what

5    importance it is to its source of revenues.  I can only

6    observe that it must be worth something because there are

7    going to be a lot of lawyers' fees with all of this going

8    on, motion to transfer and all of that kind of stuff,

9    between now and the preliminary injunction hearing.

10        So hopefully you-all will also have an opportunity to

11   talk about whether you can resolve this before the

12   preliminary injunction hearing in some fashion and at least

13   speak with your client about -- clients about what the cost

14   is involved in this matter on both sides and whether some

15   resolution can become of it.  My experience in preliminary

16   injunction matters is that -- when I was in practice, they

17   were very expensive and a lot of time and effort.  So if

18   there's any opportunity to resolve the dispute, I encourage

19   you-all to work together and try to do that.  If not, I'll

20   be happy to address the merits of it, to the extent that I

21   reach them if I don't grant the motion to transfer.

22        MR. FITZGERALD:  Your Honor, one thing.  I, first

23   of all, appreciate that.  And also, I haven't talked with

24   this with my client -- I'm sure Mr. Morse has -- but if Your

25   Honor is inclined to give us a half a day with the

1    magistrate judge before the 29th, I would recommend to my
2    client that we do that.  I don't know if you're inclined to
3    do that or if that's even part of the local rules here.  I
4    just --
5              THE COURT:  You mean in order to resolve -- to
6    have settlement discussions?
7              MR. FITZGERALD:  Yes, sir.  We could also do that
8    on our own.  We could call a mediator, too.  I'm just
9    throwing something out there.
10              THE COURT:  Well, do you want to speak to that at
11    all, Mr. Morse?
12              MR. MORSE:  Not particularly, but --
13              THE COURT:  Okay.
14              MR. MORSE:  -- I'll certainly address it to our
15    client if that is something they want to do.
16              THE COURT:  All right.  I'm going to leave it to
17    you-all to work that out at this point.  We do have a
18    mandatory mediation schedule in the district and at some
19    point the case would have to go into mediation.  If both
20    sides think it would be productive to do that, then contact
21    Ms. Solomon and I'll consider that before the preliminary
22    injunction hearing.
23         I'm always interested in trying to get matters resolved
24    to the satisfaction of the parties, if possible, because
25    otherwise there are winners and losers generally; and at

1    least having a result that both parties can have some input

2    on is sometimes preferred.  So if you-all talk and think

3    that it would be helpful to have some discussions with a

4    third party, with maybe one of the magistrate judges, advise

5    Ms. Solomon of that; and I'll consider whether that's an

6    option at the time.

7         My only observation was between now and a preliminary

8    injunction hearing there would be a fair amount of time and

9    expense involved.  I don't know what the profit margin is

10   off of nail polish, but that expense could grossly exceed

11   profit margin off of one color line of nail polish by

12   several multiples.  At least it's possible.  If that were

13   the case, at some point there may be at least an opportunity

14   to have some common ground on resolution that both parties

15   would agree to.  So I simply offer it as that and leave it

16   at that.

17        Okay.  All right.  If not, I'll look for the briefing

18   and then we'll see you-all April 29th.

19        (Proceedings concluded at 10:30 a.m.)

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2        I, LORI RUSSELL, RMR, CRR, United States District Court
      Reporter for the Middle District of North Carolina, DO
 3    HEREBY CERTIFY:

 4        That the foregoing is a true and correct transcript of
      the proceedings had in the within-entitled action; that I
 5    reported the same in stenotype to the best of my ability and
      thereafter reduced same to typewriting through the use of
 6    Computer-Aided Transcription.

 7

 8    _____          Date:  4/14/11

 9    Lori Russell, RMR, CRR
      Official Court Reporter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```