# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION NO. 1:11CV113

| | | |
|---|---|---|
| REBEL DEBUTANTE LLC, and | ) | |
| ANNA STUBBLEFIELD, a/k/a ANNA | ) | |
| FIELDS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **RESPONSE TO PLAINTIFFS' MOTION** |
| v. | ) | **FOR PRELIMINARY INJUNCTION** |
| | ) | |
| FORSYTHE COSMETIC GROUP, | ) | |
| LTD., | ) | |
| | ) | |
| Defendant. | ) | |

Clint S. Morse
N.C. State Bar No. 38384
**BROOKS, PIERCE, MCLENDON,**
**HUMPHREY & LEONARD, L.L.P.**
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone: (336) 271-3116
cmorse@brookspierce.com

Alan B. Clement
Gregory Casamento
Jason Nardiello
**LOCKE LORD BISSELL & LIDDELL, LLP**
Three World Financial Center
New York, NY 10281-2101
Telephone: (212) 415-8600
Facsimile: (212) 303-2754
aclement@lockelord.com
gcasamento@lockelord.com
jnardiello@lockelord.com
*Attorneys for Defendant Forsythe Cosmetic Group,*
*LTD.*

## INTRODUCTION

Plaintiffs Rebel Debutante LLC's and Anna Stubblefield, a/k/a Anna Fields ("Fields") seek the extraordinary remedy of a preliminary injunction barring Defendant Forsythe Cosmetic Group, LTD. ("Forsythe") from the use of the words "rebel debutant" (the "Mark"), compelling Forsythe to recall product bearing the Mark and compelling Forsythe to engage in corrective advertising. This Court should deny Plaintiffs' motion because: (1) Plaintiffs delayed for six month before bringing this motion, (2) Plaintiffs lack any evidence of actual confusion in the marketplace, (3) Plaintiffs have failed, in the absence of actual confusion, to provide expert witness testimony showing a likelihood of confusion exists, and (4) Forsythe's nominal use of the Mark was in connection with its spring 2010 COLOR CLUB line, Forsythe has since stopped selling, advertising and promoting any product bearing the Mark, that makes this motion moot.

Furthermore, Plaintiffs fail to offer any evidence of irreparable harm from Forsythe's nominal use of the Mark. Because Plaintiffs can show neither a likelihood of success on the merits nor irreparable harm, or for that matter any harm, resulting from Forsythe's use of the Mark, and because the equities and public interest also favor denying the motion, this Court should deny Plaintiffs' motion.

## STATEMENT OF FACTS

### A.    *Forsythe's Use of the Mark*

Since 1979, Forsythe has manufactured nail polishes, lip gloss, nail lacquers and treatments at its facility in Freeport, New York. Its products are primarily sold to both

NY 643398v.1

nail salons and to distributors. Forsythe does not commonly sell product to individual retailers or individual consumers.

In January 2010, Forsythe introduced its 2010 Spring COLOR CLUB line of nail polish collections. Forsythe has been using the COLOR CLUB mark since January 1, 2003. Ex. A to Nardiello Decl. (Certificate of U.S. Trademark Reg. No. 3,152,755). Included in the 2010 Spring COLOR CLUB line was a collection called "Rebel Debutante" and within that collection was one specific color of polish, an off-green color, that was called "Rebel Debutante". *See* Dockt. No. 20, Ex. 2. (Rose Decl. ¶¶ 6-7). The COLOR CLUB collection using the Mark was one of many collections that Forsythe debuted in the Spring of 2010. Rose Decl. ¶ 3.

As with all its collections under the COLOR CLUB mark, the collection name using the Mark was displayed in advertising, including point of sale displays and web advertising on a website Forsythe maintains at cosmeticgroup.com. Rose Decl. ¶ 4. The collection name was not displayed on all the bottles in the collection; rather, each bottle within the collection had its own name so the Mark only appeared on the bottom of one bottle within the collection. Rose Decl. ¶ 6. Further, on each bottle, regardless of color, the COLOR CLUB mark was imprinted thereon. Rose Decl. ¶ 6. In the U.S., Forsythe's profits relating to the Rebel Debutante collection amount to approximately $46,745. Rose Decl. ¶ 7.

Given the COLOR CLUB collection using the Mark was intended to be used only for its Spring 2010 COLOR CLUB collection, Forsythe is no longer selling any product using the Mark in any manner and all advertising and marketing materials on Forsythe's

NY 643398v.1

website at www.cosmeticgroup.com that referenced either the collection or the individual polish using the name "Rebel Debutante" are no longer viewable. Rose Decl. ¶ 4.

### B.     Plaintiff's Use of the Mark

On October 16, 2008, Fields filed an Intent-to-Use Application with the United States Patent and Trademark Office (the "PTO") for the mark, REBEL DEBUTANTE for "clothing, namely, t-shirts, shirts, tank tops, pants, shorts, underwear, hooded sweat shirts, tube tops." A copy of the REBEL DEBUTANTE trademark application (Serial No. 77/594,106) is attached as Ex. B to Nardiello Decl. To state the obvious, her Intent-to-Use application did not cover nail polish or cosmetics, which are entirely different classifications of goods at the PTO from clothing, and it did not mention the phrase "Color Club." On August 26, 2009, Fields filed a Statement of Use, declaring that the REBEL DEBUTANTE mark was being used in commerce in connection with the sale of all of the above goods which are listed in the identification of goods on the application as early as January 1, 2009. *See* Ex. C to Nardiello Decl.

Despite Field's sworn Statement of Use to the PTO and Plaintiffs' agreement to produce to Forsythe all documents bearing the Mark, only two documents produced by Plaintiffs show any evidence of sales of products in interstate commerce.[1] Instead, the

---

[1] Plaintiffs produced some email messages which purport to show a first order for some goods on January 30, 2009. *See* Ex. D to Nardiello Decl. (REB000001-000002). However, it is not possible to determine from these email messages just how the items were purchased. However, some of the documents produced appear to show that instructions on placing the REBEL DEBUTANTE mark on apparel were first sent to t-shirt printing vendors as late as March 9, 2009. *See* Ex. E to Nardiello Decl. (REB000003-000005). In any event, the earliest document produced concerning

NY 643398v.1

documents produced by Plaintiffs show that nearly all of Plaintiffs' sales of goods bearing the mark were at an annual local music festival in Winston-Salem, North Carolina called "*The Heavy Rebel Weekender*" a gathering featuring debaucherous events and contests such as the "Wet Wife-Beater Contest," "Mud Wrestling" and the "Most Beer in 60 Seconds Contest." A copy of the Heavy Rebel Weekender website showing these events is attached as Exhibit G to the Nardiello Decl.

This event apparently caters to Plaintiffs' target audience. Whatever audience that may be, it is entirely different from Forsythe's target audience. By contrast, Forsythe's goods are intended to make their way onto the hands of women who purchase products at professional nail salons, not beer chugging contests.

Fields also uses the phrase to describe herself in her professional career as a writer and titled her book, *Confessions of a Rebel Debutante…a Memoir.* The hardcover of that book appears as Exhibit H to the Nardiello Decl., and features a white wedding dress. On February 1, 2011, nearly six months after Plaintiffs were aware of Forsythe's use of the Mark on nail polish, Fields published a paperback version of her book, the cover appearing in Exhibit 1 to Dockt. No. 1, which features a bottle of red nail polish tipped over on its side.

---

Plaintiffs' website at www.rebeldebutante.com is dated July 29, 2009, which is apparently an invoice for services "Updating godaddy.com store with new products and categories; Updating www.rebeldebutante.com." *See* Ex. F to Nardiello Decl. (REB00006). The document does not show just what content, if any, was updated, and it does not describe content for the site, including how the mark was used on the site and what products were offered for sale in connection with it.

NY 643398v.1

Fields career as a writer, however, is largely irrelevant because Forsythe is not in the writing business. Moreover, the title of a single book cannot function as a trademark.

## ARGUMENT

### A.    This Court Must Deny Plaintiffs' Motion

Plaintiffs' motion for a preliminary injunction should be denied as moot, because Forsythe is no longer selling the Spring 2010 COLOR CLUB line collection that uses the Mark, and there is no reasonable expectation that Forsythe will repeat the "wrong" Plaintiffs allege.[2] *Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789* (4th Cir. 2001).

There is no reasonable expectation that Forsythe will re-commence use of the Mark. Forsythe sells nail polish in "collections" under its registered COLOR CLUB line and only one of the collections within the COLOR CLUB line used the Mark. Rose Decl. ¶ 3-6. This collection was only intended to be a part of the Spring 2010 COLOR CLUB collection and has therefore run its course. Rose Decl. ¶ 3-6. Accordingly, because Forsythe has stopped using the Mark without any intention to recommence use, the motion for preliminary injunction is moot.

---

[2] While Plaintiffs' brief states it is in support of a motion for a preliminary and a permanent injunction, a request for a permanent injunction is patently improper at this state of the case as permanent injunctions may only be granted upon a full consideration of the merits of a case, that is, a final determination on the merits. *Shanks v. City of Dallas, Texas*, 752 F.2d 1092 (5th Cir. 1985)

## B.    The Elements Required for a Preliminary Injunction are Lacking

Plaintiffs' motion should be denied because they cannot prove the elements necessary to obtain a preliminary injunction under the law of this Circuit.

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly," *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001), and "only in the limited circumstances which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992). Furthermore, the purpose of a preliminary injunction is "to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits. If that need is not presented, then a preliminary injunction should not be considered." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 526 (4th Cir. 2003). "In contrast, mandatory preliminary injunctions compel action and, typically do not preserve the status quo." *Am. Whitewater v. Tidwell*, 2010 U.S. Dist. LEXIS 127306, 30-32 (D.S.C. Dec. 2, 2010).  Accordingly, "in cases where the request for preliminary relief encompasses both an injunction to maintain the status quo and to provide mandatory relief, as here, the two requests must be reviewed separately, with the request for mandatory relief being subjected to a more exacting standard of review." *Tiffany v. Forbes Custom Boats, Inc.*, 1992 U.S. App. LEXIS 6268, 18-22 (4th Cir. Apr. 6, 1992).

At a minimum, whether the request is for mandatory relief or otherwise, to obtain a preliminary injunction under Fed. R. Civ. P. Rule 65, the movant must

NY 643398v.1

prove: (1) The party is likely to suffer irreparable harm in the absence of preliminary relief; (2) The party is likely to succeed on the merits; (3) The balance of equities tips in the party's favor; and (4) An injunction is in the public interest. *Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010). All four elements are necessary. *Id.*

Because Plaintiffs cannot demonstrate any of these factors, much less all of them, Plaintiffs' motion should be denied.

## C.   *Plaintiffs Cannot Show Irreparable Harm*

### 1.   Plaintiffs' Delay in Requesting a Preliminary Injunction Belies the Need for Relief

Plaintiffs come before this Court, nearly six months after they became aware of Forsythe's use to request a preliminary injunction.[3] The Court should deny Plaintiffs' request because such a long delay precludes Plaintiffs' ability to prove irreparable harm under these circumstances.

Truly irreparable harm is harm that must be immediately addressed. "Since an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (citation omitted).

---

[3] While Plaintiffs have previously argued that they were engaged in efforts to get Forsythe to voluntarily cease using the Mark, Plaintiffs do not explain why, if they were suffering irreparable harm, they did not move sooner.

NY 643398v.1

As stated in Forsythe's Response to Plaintiffs' Motion for Expedited Discovery, which Forsythe incorporates herein by reference, the delay here is the clearest evidence that Plaintiffs will not be irreparably harmed. Moreover, the year in which Plaintiffs and Forsythe have coexisted in their different respective markets has itself created a status quo that an injunction would now disturb rather than preserve.

### 2. Plaintiffs Are Not Entitled to a Presumption of Irreparable Harm

Plaintiffs' claim of irreparable harm is based on a legal presumption that they argue arises upon a showing of likelihood of confusion. *See* Plaintiffs' Brief, Dockt. No. 8 at 33. As a threshold matter, and for the reasons expressed in Forsythe's Response to Plaintiffs' Motion for Expedited Discovery, the continued existence of any such legal presumption is dubious.

In the unlikely event that the presumption survives in a trademark case in the Fourth Circuit following the U.S. Supreme Court's decision in *eBay*, Plaintiffs' at least **six** month delay negates any alleged presumption. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) (in pre-*eBay* case, holding delay in applying for injunctive relief in a trademark case tends to neutralize the presumption).

Because the presumption of irreparable harm in trademark cases has been called into serious question by virtue of the Supreme Court's decision in *eBay,* Plaintiffs must show the irreparable harm they would suffer in the absence of a preliminary injunction. Which of course, Plaintiffs have not shown, and cannot show.

NY 643398v.1

### 3. Plaintiffs' Have No Actual Irreparable Harm

Apart from relying on the presumption of harm, Plaintiffs have not even attempted to establish "irreparable harm." Instead, they merely rely on the hope that the Court will provide them with a presumption of irreparable harm. *See* Plaintiffs' Brief, Dockt. No. 8 at 33. That is not sufficient. Plaintiffs have not explained, assuming there was a likelihood of confusion, what the impact of confusion would be, what services or products would be affected, how this "harm" is any different from what has occurred in the over 14 months that the parties have both contemporaneously been using the Mark, or whether the alleged harm has already been felt or is even imminent. Accordingly, Plaintiffs show no harm, let along irreparable harm that would allow them to obtain an injunction.[4] Further, Plaintiffs have not shown why money damages would be insufficient, thus making a preliminary injunction proper.

---

[4] While Forsythe's profits have been relatively meager (*See* ¶ 7 of Rose Decl. stating that net profits after discounting international sales were approximately $43,000), after review of documents recently produced by Plaintiffs any damages (and Forsythe does not concede damages would under any circumstances be appropriate in this case) appear to be miniscule. For example, Plaintiffs have alleged that they have sold approximately $10,000 to date in goods under the REBEL DEBUTANTE mark. However, documents produced by Plaintiffs' show virtually no sales of goods, despite Forsythe's request for same. Plaintiffs' document no. REB0000010, attached as Exhibit I to the Nardiello Decl., shows that Plaintiffs ordered 225 pieces to be sold at a local Winston-Salem music festival. Even giving the Plaintiffs the benefit of doubt as to the price of those items (it is not possible to discern the identity of the goods from the documents provided as the documents are inadequate), and assuming each item was valued at $25.00 (in reality, it is likely less since several items on the rebeldebutante.com website sell for less), this would only result in gross sales of $5625 and does not account for the cost of the purchase of the goods, which was $1364.94, (*See* Plaintiffs' Production Document No. REB000010, attached as Ex. I to the Nardiello Decl.) which leaves a net profit (not excluding other expenses or overhead) of about $4,260.

NY 643398v.1

**D.**   *Plaintiffs Are Not Likely to Succeed on the Merits Because They Fail to Show Likelihood of Confusion*

The Fourth Circuit examines several factors to determine likelihood of confusion:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009). "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'" *Id.* (citations omitted).

### a.   The Plaintiffs' Mark is not Strong or Distinctive

Despite the existence of a federal registration for REBEL DEBUTANTE, the strength of Plaintiffs' Mark is actually weak. Plaintiffs use in the marketplace is almost non-existent—only $10,000.00 in total sales. Furthermore, as used by Plaintiffs, the mark is actually descriptive and therefore not inherently distinctive. "Descriptive marks define a particular characteristic of the product in a way that does not require any exercise of the imagination." *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 394 (4th Cir. 2009). Descriptive marks are not entitled to trademark protection absent a showing of secondary meaning, in other words "that a descriptive mark has become sufficiently distinctive to establish a mental association in buyers' minds between the alleged mark and a single source of the product." *Id.*

NY 643398v.1

Here, Plaintiffs' use of the term "Rebel Debutante" for a woman who is both a self-admitted and self-promoted rebel and a debutante in addition to selling clothing using that term to promote a woman who is a rebel and a debutante to other women who are (or view themselves as) both rebels and debutantes is descriptive on several levels. Therefore, the Mark is weak as used in the marketplace and this factor favors denial of Plaintiffs' motion.

### b. Consumers Will Not View The Marks As Similar Given the Differences in Actual Use

A comparison of Plaintiffs' Mark and Forsythe's use of "Rebel Debutante" reveals that they are distinct from one another and not likely to cause actual confusion among consumers.

First and foremost, Forsythe's use of its COLOR CLUB house mark negates any likelihood of confusion. *See* Exhibit 12 to Plaintiff's Brief (Dockt. No. 8). "If one of two similar marks is commonly paired with other material, that pairing will serve to lessen any confusion that might otherwise be caused by the textual similarity between the two marks." *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 271 (4th Cir. 2006).

The presence of a house mark reduces or eliminates the likelihood of confusion. *See CareFirst*, 434 F.3d at 271 ("CareFirst BlueCross BlueShield" not likely to be confused with "FirstCare"); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000); *Wonderworks*, 455 F. Supp. 2d at 459 (denying injunction when use

NY 643398v.1

of CRANIUM house mark with board game lessened confusion with use of WONDERWORKS); *Four Seasons Hotels Ltd. v. Koury Corp.*, 776 F. Supp. 240, 247 (E.D.N.C. 1991) ("Holiday Inn – Four Seasons" for Greensboro hotel not likely to cause confusion with "Four Seasons" national hotel brand).

Here, Forsythe's COLOR CLUB mark is a recognized brand in the nail polish industry and has been since at least January 2003. *See* H. Rose Decl. ¶ 3. The COLOR CLUB house mark distinguishes Forsythe's use of the words "Rebel Debutante" from Plaintiffs' mark because the COLOR CLUB mark is displayed prominently in connection with its use of the phrase "Rebel Debutante" both on the nail polish bottle and on all advertising and point of sale displays. Of course, Plaintiffs' use of the Mark does not incorporate the COLOR CLUB house mark, as it is a registered mark of Forsythe.

Moreover, the manner in which Forsythe has used the phrase, "Rebel Debutante" is entirely different from the way in which Plaintiffs are using their mark. In addition to using both its COLOR CLUB house mark and the phrase "Rebel Debutante" on advertising, including point of sale displays, Forsythe also uses the phrase "Rebel Debutante" as the name of one of its polishes. The phrase in that case appears in miniature letters on the bottom of the nail polish bottle, as is common in the industry.

Finally, visually, Forsythe's use with its stylistic, classy script on one COLOR CLUB nail polish collection is impossible to confuse with Plaintiffs' block-printed, angled use on clothing. *Compare* Ex. 12 to Plaintiff's Brief (Dockt. No. 8)(showing Forsythe's composite) with Ex. 21 to Plaintiff's Brief (Dockt. No. 8) (showing Plaintiffs' composite).

NY 643398v.1

All of these differences impart a different commercial impression on Forsythe's REBEL DEBUTANTE mark such that it is not likely to be confused with Plaintiffs' mark. And in fact, over 14 months of contemporaneous use with no actual confusion supports a finding of no likelihood of confusion. Accordingly, this factor favors denying the motion.

### c.    The Parties' Products are Completely Different

The market for Plaintiffs' clothing products (shirts, shorts, undergarments, etc.)[5] is different and distinct from the market for Forsythe's nail care products (nail colors, lacquers, polishes, etc.).

More striking is the complete difference in marketing channels in which the products are actually sold. Much of Forsythe's goods are sold to professional nail salons and distributors. The goods finally make their way onto the hands of women who care about their appearance and who respond to Forsythe's advertising and marketing, which often depicts models wearing Forsythe's numerous shades of nail polishes and nail art designs. The models often have a neat, fashionable or "couture" appearance. *See* Plaintiffs' Brief, Dockt. No. 8, Ex. 12 (image from Forsythe's home page at www.cosmeticgroup.com). The images depict a woman who is concerned

---

[5] Plaintiffs attempt to tie Plaintiffs' alleged comedic and entertainment services into their market analysis. However, Plaintiffs' trademark registration and use of the REBEL DEBUTANTE mark is restricted to clothing. Moreover, the fact that a single book title is descriptive and does not confer trademark rights has long been recognized in trademark law. Accordingly, Forsythe's analysis of how the markets compare centers on the goods alleged in Plaintiffs' trademark registration.

NY 643398v.1

about her appearance. It is this image that prospective purchasers of Forsythe's products project onto themselves.

This is completely at odds with how Plaintiffs market and sell their REBEL DEBUTANTE clothing. As mentioned above, the vast majority of Plaintiffs' sales were derived from a t-shirt print which was apparently offered for sale by Ms. Fields personally, at a local Winston-Salem music festival, The Heavy Rebel Weekender. Email correspondence produced by Plaintiffs shows that Ms. Fields purchased 225 pieces for the festival over the July 4 weekend in 2010. *See* Ex. J to Nardiello Decl. (Plaintiffs' document production Nos. REB000024 through REB000025).

According to the Heavy Rebel Weekender website at www.heavyrebel.net, the Heavy Rebel Weekender is a "celebration of all that is Rock & Roll" and is a "house party" of sorts. It also involves raunchy or crude events and competitions. Some of these events include mud wrestling and the "Most Beer in 60 Seconds" contest. *See* Ex. G to Nardiello Decl. (website printout of Heavy Rebel Weekender website). The description for the "Most Beer in 60 Seconds" contest provides in part:

> Its pretty self-explanatory. You show us your 21[sic], we put your ass on stage, supply you with FREE beer and YOU drink it. Last years [sic] winner drank 5, can you do better? Here's the catch: You get 60 seconds, you CAN NOT puke . . . .

Other events include the "Wet Wife-Beater Contest:"

> This is the event of the weekend according to the poll we took! No, its not beating a wetted wife, its a wet T-Shirt Contest! The T's are replaced with much "nicer" wife-beater's! . . . Competition is "stiff" and the judges will be "hard" on you, but its well worth it!

NY 643398v.1

Apart from the goods of the respective parties, which are highly dissimilar, one can hardly imagine a more dissimilar environment where the parties' goods are sold: there is simply no chance that consumers would believe that on viewing Plaintiffs' mark in connection with t-shirts or other articles of clothing sold by Plaintiffs at such raunchy events, that one would somehow mistake or believe that Plaintiffs' goods are associated with Forsythe's nail polish sold in professional nail salons. The plain difference in the products and markets here favors Forsythe.

Plaintiffs offer thin factual support for their assertion that they are about to expand to the sale of nail polish. In fact, it is highly unlikely that a company, such as Rebel Debutante LLC, which offers non-brand name apparel items such as t-shirts, thongs and shorts, would be expected to expand into cosmetic products and especially nail care products, given the high barriers of entry for the nail polish industry. *See* Rose Decl. ¶ 8. Further, Plaintiffs have offered no business plans or other documentary evidence demonstrating the alleged planned expansion into nail products.

In any event, Ms. Fields has provided a sworn affidavit to the Court that she is a full time student at Wake Forest University School of Law. Fields Affidavit, Dockt. No. 24, Ex. 1, ¶ 3. As this Court knows, it is difficult to expand one's side business while studying to pass the bar.

### d.     The Parties do not use similar facilities

Plaintiffs' and Forsythe's products are sold in completely different manners. Plaintiffs' goods are only available through her website and, as is evidenced through Plaintiffs' documents production, at a local Winston-Salem music festival. In

NY 643398v.1

contrast, Forsythe does not directly sell its goods on the Internet. Rose Decl. ¶ 5. Plaintiffs admit that they do not sell their products in the same places as Forsythe. Plaintiff's Brief, Dockt. No. 8, P. 26. None of the facilities overlap; therefore, this factor weighs in Forsythe's favor.

### e. The Parties do not use similar advertising

As mentioned above, the parties' respective marketing positioning is completely different. Forsythe's marketing is directed to and appeals to women who are conscious about their appearance. Moreover, Forsythe's advertising uses the COLOR CLUB house mark. In comparison, Plaintiffs' goods are offered for sale at music festivals which host lewd competitions and events that are degrading to women (wet t-shirt contests, mud wrestling). This factor therefore favors a finding of no likelihood of confusion.

### f. No Intent to Infringe by Forsythe

Plaintiffs argue, without supporting case law, that Forsythe willfully committed trademark infringement because Forsythe had constructive notice of Plaintiffs' use of its REBEL DEBUTANTE mark by virtue of the filings at the PTO. If constructive notice was sufficient to show willful infringement, every trademark infringement case would be a willful infringement case. Plainly, this is not the law.

As to the evidence of Forsythe's actual intentions, Forsythe had never heard of Anna Fields or Rebel Debutante prior to receiving their cease and desist letter. Rose Decl., Dockt. No. 34, Ex. 5, ¶3. Plaintiffs point to no evidence—and indeed there is no evidence—that Forsythe intended to infringe on Plaintiffs' REBEL

NY 643398v.1

DEBUTANTE mark. Forsythe's use of the phrase "Rebel Debutante" in connection with its nail polishes was the result of an independent creative effort by Forsythe via its naming and branding agent, an independent contractor named Ms. Valentina Silva.

Ms. Silva created a list of names that included the term, "Rebel Debutante." Rose Decl., Dockt. No. 34, Ex. 5, ¶ 9. An email message with the list from Ms. Silva to the President of Forsythe, Ms. Harriet Rose, is attached as Exhibit K to the Nardiello Decl. Forsythe decided to adopt the name for a nail polish color and as a nail polish collection sometime in November 2009. Rose Decl. ¶ 3. At that time, Forsythe had never heard of Ms. Fields, her book, or her company, Rebel Debutante, LLC. *See* H. Rose Decl., Dockt. No. 20, Ex. 2, ¶ 10 and H. Rose Decl., Dockt. No. 34, Ex. 5, ¶ 3. Thus, this factor weighs in Forsythe's favor.

### g. No Actual Confusion

Actual confusion can be demonstrated by both anecdotal and survey evidence, *George & Co.*, 575 F.3d at 398 (the Fourth Circuit indicates that "evidence of only a small number of instances of actual confusion may be dismissed as *de minimis*."). Here, Plaintiffs have provided no survey evidence and zero evidence of confusion.[6] This factor, therefore, weighs heavily against granting a preliminary injunction.

---

[6] Plaintiffs merely provide an email message from a purported customer who allegedly inquires as to whether Rebel Debutante LLC sells nail polish. Ex. 22 to Dockt. No. 8. This allusion is so obscure and unsubstantiated that it should be discounted entirely. Further, even if this message were authentic, it does not show confusion, it does not refer to Forsythe and it does not confuse one company for the other. Moreover, even if the author of the message did express confusion, the quantity of alleged reports—a single alleged instance—is *de minimis* under the Fourth Circuit's

NY 643398v.1

## E.    *The Balance of Equities Does Not Favor an Injunction*

Equity favors denying the motion because the potential harm to Forsythe would be substantial, *see* H. Rose Decl.,  ¶¶ 9-10, whereas the injunctive relief will not even remedy the alleged "confusion" harm claimed. Forsythe has already established that Plaintiffs are not suffering and will not suffer any irreparable harm from Forsythe's use of the term "Rebel Debutante" on its COLOR CLUB nail polish collection or on an individual nail polish. Furthermore, and perhaps most importantly, Forsythe has completely stopped selling goods bearing the Mark and has taken down all references to the term as a nail polish collection and as a nail polish shade from its website.

In contrast, the harm to Forsythe is drastic, even though it is no longer selling or advertising the product with the Mark. Because Plaintiffs seek mandatory relief, Forsythe would be forced to go through the laborious and costly task of determining, if possible, where all of the "Rebel Debutante" collections are sold and where the individual bottles of "Rebel Debutante" nail polish are located and, again if possible, trying to collect the polish and displays from these locations.[7] This task is doubly difficult since it is not Forsythe, but its distributors who place the products in the stream of commerce. Accordingly, there is a complete inequity in the drastic relief requested.

---

decision in *George & Co*. A single instance is just too small a number on which to base an injunction for Plaintiffs, a company with annual sales of perhaps $10,000. See footnote 4, *supra*.

[7] Because Forsythe has already sold the nail polish to individual nail salons, it does not believe it is necessary to find and collect its individual polish or its "Rebel Debutante" collection displays from individual nail salons.

NY 643398v.1

## F.    Public Interest

The public interest favor denying the motion: (1) the public has an interest in Forsythe's continued employment of forty New York residents without suffering from the undue financial burden it would face as a result of the mandatory preliminary injunction requested by Plaintiffs, (2) the public has an interest in not granting drastic relief absent damage to good will; and (3) the public has an interest in not granting drastic relief absent likely confusion in the marketplace between Plaintiffs' clothing products and Forsythe's nail polish products. Accordingly, the public interest should weigh in favor of denying Plaintiffs' request for preliminary injunction.

## G.    Plaintiffs' Smear Tactics Do Not Obscure The Fact That They Have Not Met Their Burden For A Preliminary Injunction

Plaintiffs, given an opportunity to supplement the record, continue to make unsupported and unfounded allegations against Forsythe—i.e. Plaintiffs allege that Forsythe has "willfully or recklessly violated trademark laws" in the past, and therefore alleges that it must be doing so in this case.[8]

Plaintiffs mischaracterize a Consent Order which was proposed by stipulation and issued in one matter to somehow prove that Forsythe "willfully" or "recklessly" violated trademark laws. Nothing could be further from the truth. The Consent Order by Stipulation in a matter involving the use of clear acetate rectangular packaging

---

[8] Even assuming that Forsythe has in the past, "willfully or recklessly violated trademark laws in the past"—which it vehemently denies—it is wholly improper to infer that since a party has acted in one manner in one circumstance, that it has done so in the instant circumstance. Such character "evidence" is not admissible against Forsythe in the current action.

made no reference, mention, or inference that Forsythe had acted willfully or recklessly or had even violated trademark laws. *See* Ex. L to Nardiello Decl. Plaintiffs also conveniently omit the fact that the Order explicitly dismissed the Plaintiff's claims for damages. *Id* P. 2.

For these reasons, Plaintiffs' motion should be further denied.

## CONCLUSION

For the foregoing reasons, the motion should be denied.[9]

This the 22nd day of April, 2011.

/s/ Clint S. Morse
Clint S. Morse
N.C. State Bar No. 38384
**BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.**
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:   336/271-3116
cmorse@brookspierce.com

and

Alan B. Clement
Gregory Casamento
Jason Nardiello
**LOCKE LORD BISSELL & LIDDELL,
  LLP**
Three World Financial Center
New York, NY 10281-2101
Telephone:  (212) 415-8600
Facsimile:  (212) 303-2754

---

[9] If the Court is inclined to grant the motion, any bond should be set at a high amount sufficient to compensate Forsythe for the harm it would likely incur. Rose Decl. ¶¶ 9-11.

NY 643398v.1

AClement@lockelord.com
GCasamento@lockelord.com
JNardiello@lockelord.com

*Attorneys for Defendant Forsythe Cosmetic Group, LTD.*

NY 643398v.1

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

**ANDREW L. FITZGERALD**
Strauch Fitzgerald & Green, P.C.
118 S. Cherry St.
Winston-Salem, NC 27101
336-725-8688
Fax: 336-725-8688
Email: afitzgerald@sfandglaw.com

This the 22nd day of April, 2011.

/s/ Clint S. Morse

NY 643398v.1